SECOND NATIONAL BANK OF WATKINS v. MILLER *et al.*

*Evidence — husband and wife — wife's separate estate — agency — declarations of agent.*

A husband obtained a loan upon notes made by his wife, and indorsed by him. *Held*, that declarations made by the husband at the time he applied for the loan, that he was conducting the business for his wife, and at the time the loan was made, that he was her agent, were inadmissible to establish the fact of his agency, or that the loan was being made for the benefit of the wife's separate estate.

The fact that defendant was insolvent; that she had secured other notes of his by bond and mortgage; that he had charge of her separate estate, and that she allowed him to draw funds and manage the same, making improvements upon the estate, did not tend to establish that he was her agent to bind her separate property in this transaction.

THE action is upon two notes of $1,000 each, made by the defendant Gabriella Miller payable to the order of Charles Miller, and by him indorsed. The defendant Charles Miller did not interpose any defense. The defense is, that these notes were given upon loans made by the plaintiffs to Charles Miller, the husband of said Gabriella, "for his use and benefit, and not for the use and benefit of the defendant, or for the benefit of her separate estate;" that she was an accommodation maker of the notes and surety thereon for her husband; and that the plaintiffs had knowledge of these matters when they discounted the notes.

The case was tried at the Schuyler county circuit, in March, 1871, before one of the justices of this court and a jury. The principal question litigated was, whether the notes were given for the benefit of the separate estate of Mrs. Miller. Exceptions were taken to the rulings of the justice upon the trial, which, so far as is material, are stated in the opinion. The jury found in favor of the plaintiff for the amount of the notes, and interest, etc. An order was made that the exceptions be first heard at general term.

*E. P. Hart*, for plaintiff.

*J. McGuire*, for defendant.

MILLER, P. J. The right of the plaintiff to recover in this action depends upon the fact, whether the defendant, who was a married

woman, gave the notes in question while engaged in carrying on a separate business, which was alleged to have been the purchasing of grain upon commission, by the instrumentality of her husband, acting as her agent in the prosecution of such business, with her knowledge and consent. The judge upon the trial allowed evidence of the declarations of the defendant's husband against the objection of the defendant, and charged the jury that the declarations of the husband, made at the time of the discount of the paper, were to be considered by the jury to establish an agency on the part of the husband for his wife. To each of these rulings an exception was duly taken by the defendant's counsel.

I think that the judge was in error in both of the rulings. The declarations made at the time he applied for the loan, to the effect that he was conducting the business for his wife, and that the business was his wife's business, and the statements made at the time the note was discounted, that the husband was the agent of the wife, were made without any direct authority, according to the proof. There is no evidence that she gave her husband any power thus to bind her, and procure the loan in question, nor that she said any thing, or did any act to bind herself, except the signing of the notes. The authority, then, to make representations outside and independent of the paper, which would create a liability, if it does exist at all, is only a matter of inference. It was not in the contract, and is not apparent from the papers upon which the money was obtained. The signing of the notes by the defendant Gabriella Miller, as maker, and the delivery to her husband, did not, I think, constitute the husband her agent to make declarations which would be obligatory upon her, independent of the contract itself. As the case stands, she signed the notes at her husband's request, without receiving any of the money realized, and without any knowledge what was to be done with it, or of its application. These circumstances did not confer any authority upon the husband to make representations in conflict with the plain import of the notes, or make him an agent of the defendant for any such purpose.

It cannot be claimed upon any sound legal principle, that the holder of a promissory note becomes the authorized agent of the maker to alter the contract and give assurances that the note is made for purposes not appearing upon its face. If the defendant had intended to charge her separate property, she could have mani-

fested such intention in the instrument creating the obligation. *Corn Ex. Ins. Co.* v. *Babcock*, 42 N. Y. 613; *Shorter* v. *Nelson*, 4 Lans. 114. To assert that she so intended without any such declaration, or even without any evidence of her own oral declarations to that effect, and only because the holder of the note so stated, is carrying the doctrine of implied agency far beyond what is authorized, either by the circumstances, or warranted by any adjudged case. No such authority can be thus conferred. In *Shorter* v. *Nelson, supra*; where the husband, acting as general agent with reference to his wife's separate estate, informed the plaintiff of her ownership of a separate estate, and induced him to credit her with goods and services for her husband's benefit, it was held, that the wife's estate was not charged, and that this was so, even although the wife had told the plaintiffs, while furnishing the goods, that they were for her and should be paid for out of her separate estate. ' There was proof in the case cited, to show that the wife stated that the husband was her agent. The case now considered is much stronger than the one last cited, as in the case at bar the obligation was in writing, and is only varied by the declarations of the husband, and not of the wife.

In *Bank of Albion* v. *Burns*, 46 N. Y. 170, where the real estate of the wife was mortgaged to secure the debt of her husband, it was held that she occupied the position of a surety and that she and those claiming under her are entitled to the benefit of the rules prohibiting the dealing of the creditor with the principal debtor to the prejudice of the surety; that an extension of the time of payment without her assent is such a dealing, and discharges the mortgage; and the agency of the husband to bind the wife, to be inferred from the possession of the mortgage, has respect to and is limited by the terms of the instrument.

ALLEN, J., says, after laying down the rule last above stated, " It,' the instrument, " cannot be extended by implication. The most that can be inferred is, that the husband had authority to bind the property of the wife by the delivery of the mortgage to the plaintiff for the sum named, payable at the time and in the manner specified in the bond to which it was collateral; that is, to deliver the mortgage as a valid instrument, to take effect according to its terms." By parity of reasoning, the defendant's husband had only authority to deliver the note and receive the money without increasing the obligation which she had thereby created. It gave him no

unlimited power of attorney or agency to pledge her separate property for the payment of the debt, and his declaration could not affect her liability. When the maker of a promissory note gives it to another to enable him to raise money on it, without any directions or instructions, the maker is not bound by the representations made. *Jackson* v. *Fassitt*, 33 Barb. 645.

It is insisted by the counsel for the plaintiff, that the conversation and statement of the husband with the bank officers, when he applied for the discount and presented the note of his wife for that purpose, was properly received as a part of the *res gestæ* accompanying the request for the loan of and the presentation of the paper for discount. I am unable to see how the declarations proved can be regarded in any such light as is claimed,— as any authority to apply for a loan or to present the notes for that purpose would not necessarily imply a right or confer power to make representations, as is manifest from the cases cited.

Nor, in my opinion, can the declarations of the husband be held competent upon the question of agency, as in a case where the proof of agency is doubtful and the alleged agent's declarations at the time may be submitted to the jury, with his acts, to accept or reject, as they shall find the fact of agency or not. There was no evidence in the case which authorized the admission of the declarations upon any such ground, and the authorities relied upon do not apply to the facts presented upon the trial of the case at bar. See Cow. & Hill's Notes to Phillip's Ev., *n.*, 183, and cases cited.

The only evidence of the husband's agency, in regard to binding the separate estate of the defendant in this transaction, was his own alleged declarations and acts. Not a single particle of testimony is introduced showing the acknowledgment or recognition of his agency by the wife, in this business. His insolvency, and the fact that she had secured other notes by bond and mortgage, or by transferring a bond and mortgage as collateral security, or that he had charge of her separate estate and that she allowed him to draw funds and manage the same, making improvements and repairs, does not, I think, tend to establish that he was her agent to bind her separate property in this transaction, or that the business in which he was employed really was hers. If such was to be inferred from these circumstances, it would be in direct conflict with the rule laid down in *Shorter* v. *Nelson*, before cited.

If facts of the character stated can establish an agency of the

husband, they would fix the liability of the wife in almost every case where he has acted or assumed to act on her behalf. This is going far beyond what the law intends, and I think no such doctrine can be sustained.

The exception to the charge does not, however, rest upon any such basis as is last discussed, for as will be seen the judge held, that Mrs. Miller having so far constituted her husband her agent in giving him the notes to be discounted at the bank, as was calculated to convey the impression to the bank that the paper was hers, she was the principal, and that whatever was done was for her benefit, and consequently the declarations made at the time of the presentation of her notes were proper evidence. He thus upheld the doctrine that he was her agent, by implication, which, as we have seen, was erroneous and is in conflict with adjudicated cases.

For the errors stated, a new trial must be granted, with costs to abide the event.

All concurred.

*New trial granted.*