Van Vorst, J.
At the time the moneys were advanced by the mortgagees, upon the mortgages now sought to be foreclosed, there were prior mortgages upon the premises, executed by the defendant, Charles McIntyre, before his marriage. The after-acquired dower rights of his wife, the defendant, Catharine McIntyre, were in subordination to the rights of the holders of these mortgages.
The prior mortgages were in fact unsatisfied of record when the moneys were advanced on the mort *470 gages in suit, although it was understood that such moneys should be, and they were, in fact, applied to the payment of such prior mortgages, and they were satisfied of record.
I am satisfied that when these moneys were paid on the now existing mortgages, and the prior mortgages ■were satisfied, all the parties were resting under a mistake as to the effect of the execution of these last mortgages by the defendant Catharine McIntyre. She was not then of age ; but the fact of her infancy was not known to the persons taking the second mortgages. They paid their moneys and caused the first mortgages to be actually satisfied of record in ignorance of the fact of the infancy of Catharine McIntyre.
As Mrs. McIntyre did not disclose the fact of her infancy at the time, she, as well as -her husband, if he was aware of the fact, must have supposed that it would not affect the validity of the transaction. We cannot suppose that the fact was concealed to injure the persons taking the second mbrtgages.
The mortgages were duly executed and acknowledged by her, and there is no pretense but that she understood the nature of the instruments, and their intended effect upon her rights of dower.
In Sandford v. McLean (3 Paige, 117) the wife, in ignorance of her rights, and under a positive misrepresentation as to its effect upon her interest, signed the deed of trust.
The mortgages were executed by McIntyre and his wife in the year 1871, and the action for their foreclosure was brought in the year 1878. To this action the wife now sets up her infancy at the time she executed the mortgages, and claims that, in so far as she and her dower rights are concerned, they are void. There is no evidence that before her answer in this suit was interposed she had taken any such ground.
Under such circumstances I apprehend that it is *471 equitable and just that the prior mortgages, which were satisfied with the moneys raised on those executed by McIntyre and wife in 1871, should be revived, so as to effectuate what was intended at the time, and that the dower rights of the wife should be postponed until the mortgages last executed are satisfied. In view of the stand now taken by the wife the plaintiff can only be protected by reviving the prior mortgages.
As before stated, here was a clear mistake of fact, in which all, to some extent, must have participated. The intention of the parties, if all were innocent, as they are presumed to have been, is clear enough, and equity requires that such intentions should not be defeated if it can be well avoided. By reviving the prior mortgages for this purpose, no wrong is done to any person or any interest. I do not think the defendant, Catharine McIntyre, should be allowed to secure any advantage over the holders of the second mortgages, through their execution by her during her infancy.
If through such act she aided in procuring the loan of money with which to pay and discharge liens which overreached her dower right, and the moneys were used for that purpose, to attain simple justice, such liens so discharged should be restored. I think the doctrine of equitable subrogation applies to this case.
It has usually been invoked by persons standing in the relation of sureties, who have paid debts for which they were measurably responsible for others, as it has been also by persons who have paid claims to protect existing rights in property (Cole v. Mahan, 66 N. Y. 363).
“ The doctrine of subrogation or substitution, at first applied in behalf of those who were bound by the original security, with the principal debtor, has been greatly extended, and the principle, modified to meet the circumstances of cases as they have arisen, has been applied in favor of volunteers intervening, subse *472 quent to the original obligation, and as between different classes of sureties, and in marshaling of assets and prescribing the order in which property and funds shall be subjected to the discharge of different classes of obligations, and as between different classes of creditors, so as to do substantial justice and equity in each case” (Allen, J., in Barnes v. Mott, 64 N. Y. 397, 401).
It has been said, in some of the cases, that mere volunteers cannot invoke the doctrine of subrogation so as to keep alive or restore a debt which they have paid.
But I cannot say that, as to McIntyre and wife, the persons who advanced the moneys to pay the first mortgages were intruders. The loans were solicited to pay these mortgages, and under an understanding, express or implied, that they would be entitled to security of as high a grade as those retired. The mortgagees had the right to insist, at least, that those mortgages should be paid or assigned to them, and that for such purpose the moneys which were advanced should be applied. To this extent they were neither strangers nor volunteers.
At the time the moneys were advanced upon the second mortgages, satisfaction-pieces of the prior securities were delivered, and they were afterwards filed, and the mortgages satisfied of record. So that when the satisfaction-pieces were actually recorded, the holders of the mortgages last executed had an actual interest in the land to the extent of their mortgage.
The learned counsel for this defendant cites the case of Banta v. Garmo (1 Sandf. Ch. 383). But it will be observed that the right to be subrogated to the prior mortgage, in that case, was denied, on the ground that it interfered with the claim of an intervening judgment creditor, who had, in the interim, secured a legal lien.
*473 In Barnes v. Mott (supra), however, where the owner of the premises conveyed to him subject to a mortgage, in ignorance of the lien thereon of a judgment against a former owner, subsequent to the mortgage, pays the mortgage, and causes the same to be satisfied of record, he was held to be entitled to have the same reinstated as a lien prior and paramount to the lien of the judgment, and Barnes v. Mott was applied in Green v. Milbank (3 Abb. New Cas. 138), in which case it was held that when a person advances money to take up a mortgage, and the same is paid upon the understanding and belief, on his part, that the mortgage is the only lien upon the land, the party so paying is entitled to be subrogated to the rights of the mortgagee, as against a judgment recorded subsequent to the mortgage, which had been erroneously marked “ secured on appeal,” and that, notwithstanding the mortgage had been satisfied of record. And although the judgment was allowed, afterwards, to be enforced, it was held to be in subordination to the rights of the person who had paid the mortgage, which was for his protection restored as of its original lien (Gilbert v. Gilbert, 39 Iowa, 657).
Dower is a moral right, and as such is favored. But there is no reason in conscience why the wife’s claim should be absolutely preferred to a mortgage executed before her right attached, and which was satisfied through moneys raised with the understanding that the person advancing the money should, in reality, have a lien in so far as the dower right was concerned, equal to that which was discharged.
In order, therefore, that the plaintiff may enforce her mortgages she is subrogated to the rights of the mortgagees under the prior mortgages before their satisfaction, and she may enforce such right in this action to the exclusion of the dower rights of this defendant in the property covered by the later mortgages, and *474 after their payment out of the land her dower right will attach to any surplus.
And judgment is ordered accordingly.